# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

——————————————————

No. 1D2025-0732

——————————————————

REBEKAH JONES,

    Appellant,

    v.

FLORIDA DEPARTMENT OF
HEALTH, JOSEPH A. LADAPO, in
his official capacity, and
SHAMARIAL ROBERSON,
individually,

    Appellees.

——————————————————

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

July 29, 2026

PER CURIAM.

Appellant Rebekah Jones seeks reversal of the trial court's final summary judgment for the Department of Health and Secretary Dr. Joseph A. Ladapo, and the separate final summary judgment for Dr. Shamarial Roberson individually. As discussed below, the final summary judgments are affirmed.

"The trial court's summary judgment ruling is reviewable on appeal de novo." *Washington v. Fla. Dep't of Revenue*, 337 So. 3d 502, 508 (Fla. 1st DCA 2022). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). The movant must support assertions that a fact is not genuinely disputed with "depositions, documents, . . . affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions . . . or other materials." Fla. R. Civ. P. 1.510(c)(1)(A). To survive a motion for summary judgment, the non-movant must show that "the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fla. R. Civ. P. 1.510(c)(1)(B).

## No Genuine Dispute as to Material Facts

As stipulated by the parties, Jones was hired by the Department of Health (DOH) in 2018 and, in November 2019, became the Environmental Health Program Consultant in the Division of Disease Control and Health Protection. In March 2020, as part of DOH's response to the COVID-19 pandemic, Jones was assigned to work on the Department's "COVID-19 Dashboard" to provide an interactive illustration of COVID-19 testing data to the public. The parties agreed that Jones' chain of command began with her immediate supervisor, IT Director Craig Curry. Their Division Director was Dr. Carina Blackmore. Authority proceeded to then-Deputy Secretary Dr. Shamarial Roberson, and then-Surgeon General and DOH Secretary Dr. Scott Rivkees.[1]

Based on the depositions and exhibits filed in support of summary judgment, on or about April 9, 2020, Curry learned that Jones had posted Facebook messages identifying herself as the person who maintained DOH's COVID-19 Dashboard and explaining the information displayed on the Dashboard. About twelve days later, Curry discovered that Jones had given an interview to DOH's outside geographic information system (GIS) vendor describing her work as the Dashboard manager. Curry also found out about a blog Jones published, representing herself as the author of DOH's COVID-19 Dashboard and posting charts of DOH data she had created stemming from her job duties. Curry was

---

[1] Rivkees was succeeded in office by Joseph A. Ladapo in September 2021. Ladapo is therefore the correct party. *See* Fla. R. App. P. 9.360(c)(3).

concerned that Jones had not obtained permission from DOH's Office of Communications before making these public statements as a DOH representative about the Dashboard information.

In late April 2020, to facilitate the State's plan to reopen counties with lower rates of new COVID-19 infections, Jones was tasked with creating and presenting reopening criteria to include on the Dashboard. Jones presented her work on this "county scorecard project," including positivity rates for each county, to Deputy Secretary Roberson on April 26, 2020. According to Jones, Roberson disapproved of Jones' presentation because her COVID-19 figures exceeded the target percentage rates for reopening many counties.[2] Jones testified that Roberson instructed her to reconfigure the data by lowering the infection rates and exempt counties with smaller populations from the "scorecard" materials. Jones alleged that she considered this a directive to falsify the data, and she refused to do so. Jones added that ultimately, the county scorecard data was not published. Although she disagreed with instructions given by Roberson, Jones did amend the COVID-19 Dashboard to reflect new case positivity rates and other data provided by DOH epidemiologists.

Jones continued to publish data to the public through DOH's open data hub, including data not approved for publication by DOH. On May 5, 2020, Jones was instructed to take the data hub offline temporarily so the information could be vetted, but she was openly defiant. Jones' supervisor Curry contacted DOH's personnel department to inquire about appropriate disciplinary action for Jones' repeated violations of DOH's Communications Policy and her insubordination related to the data hub. Curry testified that as of May 6, 2020, DOH managers intended to discipline Jones through supervisory counseling, not termination. Jones was removed from her assignment on the COVID-19 Dashboard on May 6, 2020.

Jones admitted that on May 7, 2020, she altered the Dashboard files and removed several team members' administrative software rights, preventing their access and

_____

[2] The veracity of Jones' allegations is immaterial to our disposition.

3

hindering their ability to do their jobs. Curry instructed Jones to restore the administrative privileges for her colleagues and directed her not to impede their work with the Dashboard. But Jones never complied. Instead, Curry had to contact the software vendor directly to get the access privileges reinstated.

The following week, on May 14, 2020, Jones texted Curry that she was considering filing a whistleblower complaint about "how I'm being treated, the Dashboard mess, gross mismanagement." Curry testified that he told Division Director Blackmore about this text message. The next day, Jones emailed an outside GIS COVID data listserve group informing the recipients that she was no longer the manager of the COVID-19 Dashboard and that the new team running the Dashboard was not expected to "continue the same level of accessibility and transparency" as she had. No one in Jones' DOH chain of command was included in the listserve group receiving this message.

Jones' employment with DOH was terminated on May 18, 2020. Two months later, on July 17, 2020, she filed a charge of discrimination with the Florida Commission on Human Relations (FCHR). *See* § 112.3187(8)(a), Fla. Stat (2020). Jones conceded that this was the first written complaint she had submitted regarding her allegations against DOH. In the charge, she alleged that DOH terminated her employment in violation of section 112.3187, Florida Statutes, Florida's "Whistle-blower's Act." Jones asserted that she was terminated from employment for her refusal to comply with instructions to falsify data on DOH's publicly accessed COVID-19 Dashboard. Following Jones' FCHR charge, DOH's Inspector General investigated her allegations and determined that her termination was not motivated by retaliation for protected whistleblower activity. The Inspector General instead found that Jones' termination was justified by her breaches of protocol and performance deficiencies.

On March 13, 2023, Jones filed her three-count complaint for declaratory and injunctive relief, reinstatement of her employment, and monetary damages. She alleged in count I that DOH terminated her employment in violation of section 112.3187, Florida Statutes; in count II that DOH and Secretary Joseph Ladapo were liable under 42 U.S.C. § 1983 for retaliating against

4

her for exercising her First Amendment right to free speech; and in count III that former Deputy Secretary Shamarial Roberson was individually liable under 42 U.S.C. § 1983 for retaliating against Jones for her exercise of her First Amendment right to free speech.

The defendants filed motions for summary judgment, and the parties submitted depositions and exhibits, including the depositions of Jones, Curry, Blackmore, and Roberson. *See* Fla. R. Civ. P. 1.510(c)(1)(A). Based on the evidence submitted, the trial court granted the motions and entered final summary judgment for DOH on count I, for DOH and Secretary Ladapo in his official capacity on count II, and, by separate order, for Dr. Roberson individually on count III.

Rulings on Section 112.3187, Florida Statutes

As this court has held, "to establish a prima facie case under the [public sector] Whistle-blower's Act, the plaintiff must show that (1) prior to her termination, she made a disclosure protected by the Act; (2) she suffered an adverse employment action; and (3) some causal connection exists between the first two elements." *Nazzal v. Fla. Dep't of Corrs.*, 267 So. 3d 1094, 1096 (Fla. 1st DCA 2019); *see also Washington*, 337 So. 3d at 509. While Jones obviously suffered an adverse employment action, she admitted, and the trial court found, that she presented no evidence that she engaged in whistleblower activity protected by the statute before her employment was terminated. It was undisputed that Jones made no report of a violation of law or prohibited act by DOH, as defined by section 112.3187(5), to a recipient listed in section 112.3187(6), and submitted no written and signed complaint under section 112.3187(7) before her termination. Thus, we agree with the trial court that Jones failed to establish a prima facie case of retaliation under section 112.3187.

The trial court rejected Jones' argument that she was prevented from filing a written report by her termination. The court found that Jones "had ample opportunity to make a protected disclosure under the FWA . . . if she intended to do so after her alleged refusal to falsify data on April 26, 2020." The record supports the trial court's finding that Jones was not prevented by DOH or any supervisor from meeting the requirements of section

5

112.3187(5), (6) and (7) before her employment was terminated on May 18, 2020.

Next, Jones challenges the trial court's rejection of her theory that her whistleblower claim in count I should be construed as one for "preemptive retaliation," thus excusing her lack of any written disclosure to an investigative agency before her termination. But unlike some other whistleblower statutes, section 112.3187 prohibits adverse personnel action against an employe "for disclosing" information described in the statute. The Legislature could have included language providing a cause of action for a threatened or anticipated disclosure, but it did not.[3]

Jones argues that the Florida Whistle-blower's Act "is remedial in nature and should be liberally construed." *See Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 405–06 (Fla. 2001). But where there is no ambiguity in the relevant text of the statute, "there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Diamond Aircraft Indus. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013) (citations omitted). And "statutory construction cannot be used to defeat a fair reading of the statute that is grounded in its text and structure." *Dep't of Child. & Fams. v. Herstein*, 399 So. 3d 384, 392 (Fla. 1st DCA 2025) (holding that phrase "other inquiry conducted by an agency" in section 112.3187(7) does not include informal supervisory interactions; plaintiff was required to demonstrate he made protected, written disclosure and he failed to do so).

In contrast to Florida's private employer whistleblower's statutes in sections 448.101 through 448.105, Florida Statutes, the public sector Whistle-blower's Act in sections 112.3187 through

---

[3] *See e.g.*, § 448.102(1), Fla. Stat. (prohibiting retaliatory personnel action by private employer against an employee who "[d]isclosed, or threatened to disclose" a violation of law by the employer); *Bechtel Constr. Co. v. Sec'y of Lab.*, 50 F.3d 926, 931 (11th Cir. 1995) (noting express language of 42 U.S.C. § 5851(a)(1)(D) prohibiting adverse employee action against a person who "commenced, caused to be commenced, or is about to commence" a proceeding under the Atomic Energy Act).

112.31895, Florida Statutes, is a waiver of sovereign immunity limited to its express terms. *See Agency for Pers. with Disabilities v. Toal*, 406 So. 3d 978, 981 (Fla. 1st DCA 2025) (holding that sections 112.3187 through 112.31895 do not clearly and unequivocally waive sovereign immunity to authorize recovery of non-economic damages; non-economic damages are not specified as available relief under public sector Whistle-blower's Act). Further, "a waiver of [sovereign] immunity should not be found where it can only be inferred from or implied by the text of a statute, and any statute purportedly waiving immunity should be strictly construed." *Dep't of Highway Safety & Motor Vehicles v. Hightower*, 306 So. 3d 1193, 1196 (Fla. 1st DCA 2020) (citation omitted). Thus, the requirements for the nature of a protected disclosure, made to a specified recipient, in writing or otherwise as specified by section 112.3187(7) of the statute, cannot be liberally construed to recognize an action for preemptive retaliation.

We find no error in the trial court's finding that Jones' text on May 14, 2020, to her supervisor Curry, stating she wanted to complain about "how I'm being treated" was not a protected disclosure of a law violation by DOH under section 112.3187(5). The court applied the correct rule that "personal complaints" are not protected disclosures under section 112.3187. *Pickford v. Taylor Cnty. Sch. Dist.*, 298 So. 3d 707, 711 (Fla. 1st DCA 2020) (holding complaint about salary not protected); *Nazzal*, 267 So. 3d at 1097 (holding that complaints about personal conflict with supervisor not protected under section 112.3187).

Jones' argument that she was protected under the statute even without a written report of a violation of law by DOH because, under section 112.3187(7), she refused "to participate in any adverse action prohibited by this section" is without merit. Presuming the truth of Jones' allegations, her refusal to comply with a directive to "falsify data for public consumption" did not constitute a refusal to "participate in any adverse action prohibited by" section 112.3187. Adverse actions prohibited by section 112.3187 are personnel actions against a protected person, such as a fellow employee. Jones' refusals to comply with her supervisors' directives about her own job functions did not excuse her lack of a written and signed complaint as required by section 112.3187(7).

Jones does not contest the trial court's citations to her deposition and the depositions of the other witnesses to establish that shortly before she was terminated, she interfered with other employees' access to the COVID-19 Dashboard and refused to reinstate this access when directed to do so. The trial court also cited deposition pages supporting its finding that before Jones' termination, she messaged a large group of people outside DOH disparaging the new Dashboard team after she was reassigned. The trial court's finding that Jones' termination of employment was based on these instances of insubordination and violation of DOH policy, and not retaliation for protected whistleblower reports as defined by section 112.3187(5), (6), and (7), was supported by competent, substantial evidence. The court applied the correct law in entering final summary judgment for DOH on count I of Jones' complaint.

## First Amendment Rulings

In both counts II and III, Jones alleged that the defendants violated her First Amendment right to free speech by terminating her employment in retaliation for her protected speech.[4] She claimed that the defendants were liable under 42 U.S.C. § 1983 for this deprivation of her constitutional right.[5] For both final summary judgments for the defendants, the trial court found that Jones had not engaged in protected speech that was the cause of her termination from employment with DOH. We agree.

---

[4] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

[5] § 1983. Civil action for deprivation of rights.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

We find no error in the trial court's findings that Jones did not engage in protected speech that was the cause of DOH's termination of her employment. To show that her communications were protected speech under the First Amendment, Jones was required to demonstrate she (1) spoke as a private citizen; (2) on a matter of public concern; and (3) her interest in publishing the speech outweighed the employer's interest in regulating the speech. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015) (affirming judgment for the City as a matter of law where fire chief alleged he was discharged for speaking out about city's handling of budget and pension issues).

The character of speech as a citizen and not as an employee depends on whether the speech "owes its existence to a public employee's professional responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). Courts make this determination by considering "the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015) (citing *Moss*, 782 F.3d at 618).

Jones testified that she was assigned to create and manage DOH's COVID-19 Dashboard and that she was responsible for communicating with the public and the media on DOH's behalf about the Dashboard. She established that some of her public comments were made with DOH approval, and her supervisor Curry testified that some of Jones' public statements were not approved. Jones agreed that in her personal blog post and Facebook post she identified herself as the DOH Dashboard manager speaking with authority derived from her employment. Thus, Jones' public-facing comments about the Dashboard and her reassignment away from that duty were made as a DOH employee, not as a citizen on her own behalf.

On appeal, Jones does not argue that her refusal to comply with her supervisor's directives (to refrain from public dissemination of data until they were vetted by DOH personnel, to reconfigure COVID-19 data for a new purpose, and to reinstate access to the Dashboard for fellow DOH employees after she removed it) were protected by the First Amendment. Likewise,

9

Jones does not argue that her public criticism of the DOH team assigned to the Dashboard in her place was protected citizen speech. As the Supreme Court has recognized, "the government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1994) (plurality opinion). And "even many of the most fundamental maxims of our First Amendment jurisprudence cannot reasonably be applied to speech by government employees." *Id.* at 672. Summary judgment for the defendants on counts II and III was correct because Jones could not demonstrate that her employment was terminated in retaliation for her exercise of speech protected by the First Amendment.

Because we affirm the trial court's findings that Jones was not terminated from her employment in retaliation for a whistleblower complaint under section 112.3187, Florida Statutes, or for the exercise of her First Amendment right to protected speech as a citizen, we need not reach Jones' other arguments on appeal.

AFFIRMED.

LEWIS, BILBREY, and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Richard E. Johnson of Law Office of Richard E. Johnson, Tallahassee; Lisa C. Lambert of Law Office of Lisa C. Lambert, Atlanta, GA; Lawrence Walters of Walters Law Group, Longwood, for Appellant.

Miriam R. Coles and Dawn M. McMahon of Henry Buchanan, P.A., Tallahassee, for Appellee Florida Department of Health; C. Alan Lawson, Jason Gonzalez, Jessica Slatten, and Taylor Greene of Lawson Huck Gonzalez, PLLC, Tallahassee, for Appellee Shamarial Roberson.